Gaston, 1.
 

 The plaintiff filed his petition in the Superior Court of Perquimons, in the April Term, 1841, of said Court,- against Benjamin Mullen and Harriet his wife, and Thomas Wilson. The petitioner sets forth that Greenbury Mullen, deceased, formerly of Bertie County, left a last Will
 
 *163
 
 and Testament duly executed, of which he appointed his wife Harriet executrix, and William L. Gray and Turner Watson executors; that after his death the widow proved the Will, and Gray and Watson renounced the executorship; that by the said will the testator bequeathed as follows: “ I give to my son William certain negroes, (naming them,) to him, his heirs and assigns, for ever; but in case he should not arrive to the age of twenty-one years, or marry, my desire is that my daughter Sarah Mullen have the aforesaid negroes,” as by the will, which is referred to as part of the petition, more fully appears-; that Sarah Mullen intermarried with Noah Weeks, and-died intestate in the lifetime of her brother William.; that no administration was had upon her estate until the year 1839, when the plaintiff was duly.appointed her administrator; that the said William has died since the said Sarah under the age of twenty one years and unmarried, whereby the petitioner became entitled, as the administrator of the said Sarah, to the said slaves ; that Harriet Mullen, the executrix of'the testator, has intermarried with Benjamin Mullen, who, as the husband of the executrix, took the slaves into his possession, sold some of them and received large profits from their hire. The petitioner further alleges, that 'Thomas Wilson, having intermarried with one Elizabeth Mullen, and claiming that his wife was one of the next of kin of the said William, instituted a suit against Benjamin Mullen and wife, and recovered a part of the said negroes; that the petitioner has frequently applied to, the said Wilson to pay over unto h-ina what the said Wilson recovered in said suit, and to the said Benjamin to deliver over to him the negroes and account with him for their hire, and that both the said Benjamin and Thomas have refused to comply with these requests, denying his right to any part of the negroes so bequeathed, The prayer of tire petitioner is that Mullen and wife may be decreed to pay over what is due to the petitioner, and to deliver up the-said ne-groes and their issue, and the said Thomas to pay the amount recovered by him as aforesaid ; and for such other and further relief as the petitioner may be entitled to. The defendants Mullen and wife filed their answer at the succeeding
 
 *164
 
 Term. This answer, admitting all the material facts alleged in the petition, states that the testator died in 1811; that Sarah his daughter intermarried with Noah Weeks in 1818 or 1819, and died intestate and without issue in 1821; that William her brother died in 1823, unmarried and under the age of twenty-one years; that the defendants, Benjamin and Harriet, intermarried in December, 1813;
 
 that the
 
 said Benjamin, in right of his wife as executrix, took possession of these negroes as part of the estate of her testator ; and that upon the death of the said William he kept the negroes, claiming them in right of his wife as the sole next of kin to the said William, until the year 1838, when a claim was set up to a share thereof by Thomas Wilson and his wife Elizabeth, who was the' half sister of the said William, on the side of the mother of the said William. The answer states that in the year 1835, the defendant, Benjamin, sold one of the said negroes, Aaron, because of his misconduct, for the sum of $375; that in the year 1839, at the suit of the said Wilson and wife, a decree was made for the sale of certain others of the slaves ; that they were sold accordingly for the sum of $1302. These defendants insist that the petitioner is not entitled, under the will of Greenbury Mullen, to the slaves or their price ; and, if he be, insist upon the lapse of time as a bar to that claim. The other defendant, Wilson, also put in his answer, in which he says only
 
 “
 
 that he and his wife recovered, by a decree of this Court, a part of the proceeds of the property mentioned in said petition, and insists that he is not liable
 
 therefor,
 
 or any part thereof, to the petitioner.” Upon the filing of these answers a decree was made, whereby it was declared
 
 i:
 
 that the petitioner was entitled under the will of Greenbury Mullen, and upon the death of William Mullen, to the slaves bequeathed unto the said William, and.to their increase, and to the hires thereof from the death of the said William, or to the value of such of them as have been sold, if in truth any were sold, and the interest thereon, and the hire of the said slaves until they were sold ; and that the said petitioner recover of the said Benjamin Mullen the said slaves, with the hires and profits,
 
 or if they
 
 have been sold, their value with interest, and the hires
 
 *165
 
 and profits up to the time of the sale.” And the decree directed
 
 “
 
 a reference to the clerk to take an account of the value of the slaves that have been sold, with interest thereon, and their hires up to the time of the sales.” From this decree the defendant, Benjamin Mullen, prayed an appeal to this Court, which was granted by the Judge of the Superior Court.
 

 This is an appeal by one of the defendants only, and from an interlocutory decree. The law directs, that when the Superior Court, in the exercise of its discretion, shall permit an appeal from an interlocutory judgment or decree, the record of the ease shall remain below, so that all necessary orders may be there made for preparing the cause for a final trial or hearing, and that the Court, allowing the appeal, shall direct so much only of their proceedings in the cause to be certified to this Court, as shall be necessary to present the question or matter arising upon the appeal fully to our consideration. From inattention to these provisions of the law inconveniences have been repeatedly experienced, and we feel it a duty to call the notice of the Circuit Judges and of the profession to them. When a transcript is sent up of all the proceedings in the cause, without a statement of the question or matter, on which our judgment is invoked, we are not only put to much unnecessary trouble to find out what is the matter submitted to our consideration, but are often in danger of adjudging upon some technical defects, inaccuracies and imperfections appearing in the transcript, to the surprise of one or other of the parties and to the hindrance rather than the advancement of justiee. We have not hitherto deemed ourselves justifiedin-refusing to take jurisdiction of appeals from interlocutory judgments and decrees, because the matter of appeal is not specifically stated, but it must not excite surprise, if after this notice, we should find ourselves compelled to adopt this course.
 

 In the present case we have examined the matters alleged in the answer of the appellant, upon which answer the interlocutory decree is founded, to ascertain whether they be sufficient to warrant that decree. It they be, then we cannot say that there is error in it.
 

 
 *166
 
 The first question presented for consideration, is, as to the construction of the will of Greenbury Mullen. It is admitted by the counsel for the appellant that, taking the clause under which the petitioner claims per se, it contains a bequest of the negroes to William, with a bequest over in case he should die unmarried and under age, to his sister Sarah; that this ulterior executory bequest was good in law; that the interest therein was transmissible upon her death to her personal representatives; and that this interest was so transmitted notwithstanding she died before the event happened upon which the ulterior bequest was to take effect in enjoyment. But he submits that this clause of the will is to be considered in connection with the one immediately preceeding it, whereby the testator disposes of other negroes in the following words, “I give my daughter Sarah the following negroes, (naming them.) to her, her heirs and assigns forever, but in case she should not arrive to the age of twenty one years or marry, at her death my will and desire is that my son William shall have the aforesaid negroes.” The consequence of a literal construction of both these clauses would be, that, if both Sarah and William had died under age and unmarried, the negroes bequeathed in the first instance to her would go over to his representatives and those bequeathed primarily to him would become the property of her representatives. He contends that so absurd a result could not have been designed by the testator, and submits whether, to carry his intention into effect, we may not in such case understand that the ulterior limitation was to have effect only in the event of the ulterior legatee being alive at the time of the contingency. It is very probable that the testator did not intend the singular result, which would in the supposed event have followed from the dispositions he has made. Perhaps he was ignorant of what would be the construction of law upon these dispositions, or, what is yet more likely, he did not -extend his views so far as to contemplate or provide for the event of both of his children dying unmarried and without issue. However all this may be, we cannot interpolate info either of the clauses a further contingency than he ghas expressed or intimated, and it is the law which pronounces
 
 *167
 
 that an executory bequest, limited on the contingency de-dared, is transmissible in a course of succession.
 

 The next question presented, is whether the petitioner is barred by the lapse of time. Upon this no doubt can b.e entertained. Sarah died before her brother, and until an administration granted upon her estate there was no one to be barred, and he brought this petition within two years after obtaining administration.
 

 The remaining question, if what is stated in regard thereto be intended as a defence against the claim of the petitioner, is, that in the year 1839, Wilson & Wife, upon a claim that she was entitled, as one of the next of kin of William Mullen to a part of-these negroes, brought a suit against the defendant Benjamin & Wife;' and therein a decree was rendered for a sale of some of them, and they were sold accordingly. This furnishes no objection to the decreee appealed from. The petitioner was no party to that suit and of course is not precluded by the adjudication therein from settingup his claim to the negroes as belonging to him under the executory bequest. The decree now appealed from does not invalidate this sale, but declares the plaintiff entitled to the proceeds, and the defendant Benjamin is not aggrieved by this decree, because it does not appear that any part of the proceeds of this sale has been paid over to Wilson &. Wife.
 

 An objection has been here taken to the form of the decree, because it is rendered against the appellant for the proceeds of these sales, whereas, Wilson being made a party defendant to this cause and having these proceeds in his hands, the decree for that amount ought to have been made against him primarily. We should have felt much difficulty in entertaining this objection, had' it apparently been well founded, because it is rather a matter of controversy between the defendants, and Wilson is not a party to the
 
 appeal.
 
 But the objection is not warranted in point of
 
 fact
 
 by the allegations of the defendant Mullen. He does not state that any of these proceeds have gone into Wilson’s hands, nor is it warranted by any admission in the answer of Wilson. He simply denies the right of the petitioner to any part of the proceeds of the property, which he and his wife recovered by a decree
 
 *168
 
 in their suit against
 
 the
 
 other defendants, but
 
 does not
 
 admit, that what has been thus recovered by that decree has come into his hands or been paid over to him.
 

 It must be certified to the Court below that we see no error in the interlocutory decree, and there must be judgment against the appellant and his sureties for the costs of this Court.
 

 - Per Curiam, Ordered and adjudged accordingly.